Floyd W. Bybee, #012651
**FLOYD W. BYBEE, PLLC**
2473 S. Higley Road
Suite 104, #308
Gilbert, Arizona 85297
Office:  (480) 756-8822
Fax:  (480) 756-8882
floyd@bybeelaw.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Luis Aponte,** an individual; | No. |
| Plaintiff, | |
| v. | |
| | **COMPLAINT** |
| **ARS National Services Inc., d.b.a. Associated Recovery Systems, Inc.,** a California corporation; **Robert Ellison,** an individual; | |
| Defendants. | (Jury Trial Demanded) |

Plaintiff Luis Aponte alleges as follows:

### I.  PRELIMINARY STATEMENT

1.  Plaintiff brings this action for damages based upon Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq*. (hereinafter "FDCPA"), and for state law claims for unreasonable debt collection and invasion of privacy.  In the course of attempting to collect a debt allegedly owed by

1   Plaintiff, Defendants engaged in deceptive, unfair and

2   abusive debt collection practices in violation of the

3   FDCPA, and took actions which constitute unreasonable

4   debt collection and invasion of privacy under the

5   doctrine enunciated in <u>Fernandez v. United Acceptance</u>

6   <u>Corporation</u>, 610 P.2d 461 (Ariz. App. 1980).  Plaintiff

7   seeks to recover actual damages, and statutory damages,

8   punitive damages, as well as reasonable attorney's fees

9   and costs.

10   **II.   STATUTORY STRUCTURE OF FDCPA.**

11   2.   Congress passed the FDCPA to eliminate abusive debt

12   collection practices by debt collectors, to insure that

13   those debt collectors who refrain from using abusive

14   debt collection practices are not competitively

15   disadvantaged, and to promote consistent state action to

16   protect consumers against debt collection abuses. FDCPA

17   § 1692.

18   3.   The FDCPA is designed to protect consumers who have been

19   victimized by unscrupulous debt collectors regardless of

20   whether a valid debt exists.  <u>Baker v. G.C. Services</u>

21   <u>Corp.</u>, 677 F.2d 775, 777 (9th Cir. 1982).

22   4.   The FDCPA defines a "consumer" as any natural person

23   obligated or allegedly obligated to pay any debt.  FDCPA

24   § 1692a(3).

25   5.   The FDCPA defines "debt" as any obligation or alleged

26   obligation of a consumer to pay money arising out of a

transaction in which the money, property, insurance, or services which are the subject or the transaction are primarily for personal, family, or household purposes. FDCPA § 1692a(5).

6.   The FDCPA defines "debt collector' as  any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection  of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. FDCPA § 1692a(6).

7.   Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damage sustained; statutory damages up to $1,000; attorney's fees as determined by the Court and costs of the action. FDCPA § 1692k.

**III.   JURISDICTION**

8.   Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. §1692k(d) (FDCPA), and 28 U.S.C. §1337.  Venue lies in the Phoenix Division of the District of Arizona as Plaintiff's claims arose from acts of the Defendant perpetrated therein.

**IV.   PARTIES**

9.   Plaintiff is a citizen of Maricopa County, Arizona.

10.  Plaintiff was allegedly obligated to pay a consumer debt

- 3 -

1   and is a "consumer" as defined by FDCPA §1692a(3).

2  11.  Defendant ARS National Services Inc. ("ARS") is a

3   California corporation.

4  12.  ARS does business under the trade name of Associated

5   Recovery Systems, Inc.

6  13.  ARS is licensed as a collection agency by the Arizona

7   Department of Financial Institutions, license number

8   0018040.

9  14.  ARS regularly collects or attempts to collect debts owed

10   or asserted to be owed or due another.

11  15.  ARS is a "debt collector" as defined by FDCPA §1692a(6).

12  16.  Upon information Defendant Robert Ellison is a resident

13   of Maricopa County, Arizona.

14  17.  Ellison is employed as a collector by ARS.

15  18.  Ellison regularly collects or attempts to collect debts

16   owed or asserted to be owed or due another.

17  19.  Ellison is a "debt collector" as defined by FDCPA

18   §1692a(6).

19  20.  At all times relevant herein, Ellison was acting on

20   behalf of and with full authority from ARS.

21  21.  ARS is liable to Plaintiff for Ellison's actions.

22                      **V.   FACTUAL ALLEGATIONS**

23  22.  Prior to May 2006, Plaintiff opened a credit card

24   account with Capital One Bank.

25  23.  The charges on the Capital One account were made for

26   personal and family purposes.

24. Sometime after Plaintiff Capital One assigned the account to ARS for collection purposes.

25. On or about May 5, 2006, Plaintiff received a message left by an ARS collector on his answering machine.

26. The message stated that the call was from Robert Ellison of ARS, that the call was not a sales call, and that Plaintiff needed to contact Ellison immediately to avoid further action.

27. On or about May 8, 2006, Plaintiff received another message on his answering machine from Ellison stating that the call was not a sales call, and that Plaintiff needed to contact Ellison immediately to avoid further action.

28. On or about May 9, 2006 Plaintiff called ARS at the number left on the answering machine, and asked to speak with Ellison.

29. A male individual picked up the call and identified himself as Robert Ellison.

30. Ellison immediately informed Plaintiff that he was attempting to collect a debt and wanted to know if Plaintiff was going to take care of debt right then.

31. Plaintiff explained to Ellison that he had received the run-around with collection agencies before, and that he would have an attorney contact ARS to discuss resolution of the debt.

32. Ellison then asked Plaintiff if this meant that he was

refusing to pay the debt, which Plaintiff told Ellison that he was not refusing to pay, but only wanted to explore his legal options.

33. Ellison then told Plaintiff to have his attorney call him and then terminated the call.

34. On or about May 8, 2006, ARS mailed or caused to be mailed a collection letter to Plaintiff concerning the Capital One account.

35. Plaintiff received the May 8, 2006 letter on May 12, 2006.

36. On May 12, 2006 at approximately 10:57 a.m., Plaintiff received a message left by Ellison on his work voice mail. Ellison stated "Hi, Luis Aponte, this is Robert Ellison. I have not yet heard from your attorney. Please contact me at 602-230-0700 extension 2458."

37. Plaintiff had not previously given Ellison or ARS his employment information or phone number.

38. On May 17, 2006, Ellison left another message on Plaintiff's work voice mail. Ellison stated "Hi, Luis Aponte, this is Robert Ellison. I've left quite a few messages. I do expect a courtesy call back. You said you were going to have your attorney that represents you to call me. I have not heard back from him. Um, I will go another route to get your attention if I do not hear from you today. 602-230-0700 extension 2458. Um, Officer Aponte, good luck to yah, huh."

39. Also on May 17, 2006 at 9:41 a.m., Ellison called Plaintiff's home and spoke to Plaintiff's wife.

40. When Plaintiff's wife informed Ellison that Plaintiff was at work, Ellison told her that he needed to hear from Plaintiff "today" or else he was going to go after Plaintiff in court to get Plaintiff to pay his bills. Plaintiff's wife said "excuse me?", and Ellison stated that it was funny how Plaintiff could go to work but can't pay his bills.

41. On May 18, 2006 at about 4:50 p.m., Plaintiff telephoned Ellison at the phone number and extension left on the voice messages.

42. During that call, Plaintiff told Ellison that he could not call and harass him at work, or discuss this matter with anyone other than himself.

43. Ellison immediately started yelling at Plaintiff and told Plaintiff that he could do whatever he wanted.

44. Plaintiff told Ellison that he was breaking the FDCPA law, but Ellison continued to yell at Plaintiff and then stated that Plaintiff was harassing him.  Ellison then hung up on Plaintiff.

45. Plaintiff immediately called Ellison back and told him that the way he was harassing Plaintiff was not the way to resolve the matter.

46. Ellison again began yelling at Plaintiff telling him that he needed to pay his debt, and then called

1  Plaintiff some names.

2  47.  Ellison then began calling Plaintiff "Officer Aponte" in

3  a condescending manner and told him he needed to pay his

4  bills, and that he was an embarrassment to law

5  enforcement.  Ellison then hung up.

6  48.  On May 24, 2006 at 2:00 p.m., Plaintiff was in

7  Lieutenant McDonnell's office with another officer when

8  Lieutenant McDonnell's phone rang.  Lieutenant McDonnell

9  answered the call and spoke briefly.  When he got off

10  the phone, he had a look of bewilderment on his face.

11  49.  Lieutenant McDonnell told Plaintiff and the other

12  officer that "I don't know what that was just about, but

13  you two may have just been witnesses for an AI

14  (Administrative Investigation)."

15  50.  When Plaintiff asked Lieutenant McDonnell to explain, he

16  said that someone had just called to make a complaint

17  against Plaintiff.  He said that the person identified

18  herself as "Kristal from ARS National Services" and that

19  one of her employees has been in contact with Officer

20  Aponte about a personal business matter and that he had

21  threatened him by stating that I had better not catch

22  him driving through my town.  Kristal also told

23  Lieutenant McDonnell that ARS had in its computer that

24  Plaintiff had called ARS at least four times threatening

25  violence.

26  51.  During the call, and after hearing an accusation of

possible police misconduct, Lieutenant McDonnell tried to get his tape recorder hooked up to his phone, but when Kristal asked him what his name was again, she snapped at him and stated that "that's not the name you gave me at the beginning."  She then yelled at him and stated "I'm not going to be harassed by you also, I'll contact the sheriff's office, I am disgusted with law enforcement" and then hung up.

52.  Plaintiff then had to explain to Lt. McDonnell that the call was from a collection agency who was attempting to collect a debt from him.  Lt. McDonnell asked Plaintiff why they were calling him at work.  Lt. McDonnell told Plaintiff that even though it was a personal matter, he would need to notify the Deputy Chief of Police of the phone call and the accusations by ARS.

53.  Plaintiff was scheduled to report to the Police Academy after his shift, but was too embarrassed to properly perform his duties and so he returned home after work.

54.  The statements by ARS' collector as set forth above were false when they were made, and were made with intent to harass, embarrass and humiliate Plaintiff and coerce payment out of him.  These statements were also made to tarnish Plaintiff's reputation at the police department and with his peers.

55.  As a result and proximate cause of Defendants' actions, Plaintiff has suffered actual damages.  These damages

1    include, but are not limited to, headaches, loss of

2    sleep, inability to concentrate, depression,

3    humiliation, embarrassment, and other extreme emotional

4    distress.

5  56.  Defendant's actions were intentional, willful, and in

6    gross or reckless disregard of the rights of Plaintiff

7    and as part of its persistent and routine practice of

8    debt collection.

9  57.  In the alternative, Defendant's actions were negligent.

10            **VI.   CAUSES OF ACTION**

11          **a.   Fair Debt Collection Practices Act**

12  58.  Plaintiff repeats, re-alleges, and incorporates by

13    reference the foregoing paragraphs.

14  59.  Defendants' violations of the FDCPA include, but are not

15    necessarily limited to, 15 U.S.C. §§ 1692c, 1692c(a),

16    1692c(b), 1692d, 1692d(1), 1692e, 1692e(5), 1692e(7),

17    1692e(8), and 1692e(10).

18  60.  As a direct result and proximate cause of Defendants'

19    violations of the FDCPA, Plaintiff has suffered actual

20    damages for which Defendants are liable.

21            **b.   Invasion of Privacy**

22  61.  Plaintiff repeats, re-alleges, and incorporates by

23    reference the foregoing paragraphs.

24  62.  Defendants' actions constitute unreasonable debt

25    collection and an invasion of Plaintiff's privacy

26    pursuant to the doctrine enunciated in <u>Fernandez v.</u>

1    _United Acceptance Corporation_, 610 P.2d 461 (Ariz. App.

2    1980).

3  63.   As a direct result and proximate cause of Defendants'

4    actions, Plaintiff has suffered actual damages for which

5    Defendants are liable.

6              **VII.   DEMAND FOR JURY TRIAL**

7    Plaintiff hereby demands a jury trial on all issues so

8  triable.

9              **VIII.   PRAYER FOR RELIEF**

10    WHEREFORE, Plaintiff requests that judgment be entered

11  against Defendants for:

12    a)   Statutory damages of $1,000 pursuant to §1692k;

13    b)   Actual damages in an amount to be determined at

14       trial;

15    c)   Punitive damages in an amount to be determined at

16       trial;

17    d)   Costs and reasonable attorney's fees pursuant to

18       §1692k; and

19    e)   Such other relief as may be just and proper.

20    DATED   September 14, 2006   .

21

22                       s/ Floyd W. Bybee
                      Floyd W. Bybee, #012651
23                    **FLOYD W. BYBEE, PLLC**
                      2473 S. Higley Road
24                    Suite 104, #308
                      Gilbert, Arizona 85297
25
                      Attorney for Plaintiff
26